UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEVIN WHITE, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00251-SRC |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Respondent. | ) |

### Memorandum and Order

Petitioner Kevin White seeks to have his sentence vacated under 28 U.S.C. § 2255. Although White previously demonstrated acceptance of responsibility for his offense, he now asserts that: 1) defense counsel was ineffective and coerced him into pleading guilty; 2) the United States failed to establish jurisdiction and the Court "abetted" the prosecution's jurisdictional scam; and 3) the grand jury failed to properly indict him. Upon review, the Court finds that White's claims lack merit, and that White is not entitled to an evidentiary hearing, or relief, under Section 2255.

### I.     Statement of facts[1]

Beginning in 2018 and continuing up until the time of the indictment, White, along with his co-conspirators distributed large quantities of fentanyl in the St. Louis metropolitan area. Their source of fentanyl was initially Juan Gonzalez who was eventually indicted in the Eastern District of Missouri, in cause number 4:19-cr-00211-RLW, for conspiracy to distribute and possess with intent to distribute both fentanyl and methamphetamine. Gonzalez continued to supply White and his co-conspirators until Gonzalez was arrested by the U.S. Drug Enforcement

---

[1] This section is materially identical to the "Facts" section in White's Guilty Plea Agreement. *See United States v. Kevin White,* Case No. 4:19-cr-00961-SRC-4, Doc. 442 at § 4.

Administration and U.S. Marshals Service in September 2019.  White and his co-conspirators then obtained another source of supply in Arizona and continued to distribute fentanyl.

Prior to his arrest, Gonzalez would either ship packages of fentanyl through the mail or would hand-deliver the narcotics to co-conspirators like Jazmynn Lester and Aaliah Lester, who had traveled to Arizona at the request of co-conspirator Maricus Futrell and others.  Futrell was also under indictment in the Eastern District of Missouri, charged in the same case as Gonzalez.  While Gonzalez and Futrell were fugitives in that indictment, they continued to conspire with White and others to distribute fentanyl in the Eastern District of Missouri.

Once the raw fentanyl was either mailed or transported to the St. Louis area, various co-conspirators would "cut" or "stretch" the fentanyl with various products like Dormin to increase its volume and thereby increase their profit.  The cut fentanyl was then put in capsules and sold by various members of the conspiracy which included Anthony Caldwell, Roman Frenchie, Tyrone Sims, White, Martes Mosley, Michael Moore, and Futrell.

Jazmynn Lester and Aaliah Lester were "mules" in that they traveled to Arizona to meet with the source of supply to pay U.S. currency for the fentanyl and then transport the fentanyl back to St. Louis for distribution.  They were compensated for their role as mules.  Jazmynn Lester also provided her mother's residence as an address where fentanyl could be received from Arizona.  Jazmynn Lester was a paramour of co-conspirator White.

Jimmiesha Williams would provide a safe house for co-conspirators to conduct their business and would knowingly store narcotics, firearms, and U.S. currency in her residence.  She would also register vehicles in her name to shield other co-conspirators, especially her paramour Futrell from potential law enforcement scrutiny.  Williams would also take various vehicles used by co-conspirators to body shops to get them painted to thwart law enforcement scrutiny.

Deniesha Baker provided a "safe house" or "stash house" for her paramour Futrell, where he would store narcotics and U.S. currency (proceeds of his drug trafficking) and she maintained her premises for the purpose of distributing fentanyl. Futrell and other members of the conspiracy would keep a "lab" at Baker's house, which was comprised of drug paraphernalia used to cut the fentanyl and package it for distribution—grinders, pill presses, scales, empty capsules, Dormin, etc. Baker would also allow Futrell to keep his vehicles at her residence to thwart law enforcement scrutiny.

On or about June 18, 2019, the St. Louis Metropolitan Police Department intercepted a package addressed to a home on Cabanne Place in the City of St. Louis. After obtaining a search warrant, the package was opened and revealed approximately 512 grams (over half a kilogram) of a mixture or substance containing fentanyl. Police then obtained an anticipatory search warrant for the residence and conducted a controlled delivery. After the resident retrieved the package, police executed the search warrant and learned that Jazmynn Lester had advised the resident that a package was coming that belonged to "Kevin" or "Chucky"—meaning White. Eventually T.S., an unindicted co-conspirator, came to the house to retrieve the package and identified himself as "Chucky's cousin." T.S. was arrested. A vehicle that had dropped T.S. off near the house had fled the scene after T.S. was arrested. Police were able to identify the driver of the vehicle as White. The resident of the house cooperated with police, identified a photo of White as "Chucky" and showed police the phone number used by Chucky to check on the status of the package. That phone number came back to White after police searched law enforcement databases.

In total, the conspiracy was responsible for distributing more than 4 kilograms of fentanyl.

**II.     Procedural history**

In November 2019, a federal grand jury returned a three-count indictment against White and his co-conspirators. Docs. 1–2.[2] The indictment charged White with one count of conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. § 841(b)(1)(A)(vi). *Id.*

A year later, White entered into a plea agreement with the Untied States. Doc. 442. White admitted to knowingly violating 21 U.S.C. §§ 841(a)(1) and 846, admitted there was a factual basis for his plea, and confirmed that he fully understood the elements of his crime, which were:

> 1.     That between January 2018 and the date of the indictment (November 20, 2019), the defendant entered into an agreement or understanding to possess with the intent distribute a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance;
>
> 2.     The defendant voluntarily and intentionally joined in the agreement or understanding to possess with the intent [to] distribute the fentanyl, either at the time it was first reached or at some later time while it was still in effect;
>
> 3.     At the time the defendant joined in the agreement or understanding, he knew of the purpose of the agreement or understanding; and
>
> 4.     The conspiracy was responsible for distributing at least 400 grams of fentanyl.

*Id.* at pp. 2–3.

The parties jointly recommended a 120-month term of imprisonment and White agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's

---

[2] The "Doc." numbers used in the "Procedural history" section are from *United States v. Kevin White,* Case No. 4:19-cr-00961-SRC-4.

conduct falls within the scope of the statute(s)." *Id.* at § 7(A)(1)–(2); Doc. 688, Plea Tr. 19:23–20:17. White also agreed to "waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." Doc. 422 at § 7(B).

The United States Probation Officer prepared a Presentence Investigation Report. Doc. 425. The PSR calculated White's total offense level as 31 and his criminal history category as III. *Id.* at ¶ 94. Based upon a total offense level of 31 and a criminal history category of III, the guideline imprisonment range for White's offense was 135 months to 168 months.

In February 2021, the Court held a consolidated-plea-and-sentencing hearing at the request of White. *See* Docs. 335, 343, 440. At the hearing, White pleaded guilty to conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl. Doc. 442. White also confirmed the accuracy of the facts set forth in section 4 of his plea agreement[3], that he understood the elements of his crime, and that he did, in fact, do all of the things set forth in the elements:

| | |
|---|---|
| **THE COURT:** | All right. So the elements of the offense charged are set forth in Section 3 of the plea agreement, and those are the things that the United States would have to prove at trial beyond a reasonable doubt before you could be convicted or found guilty.<br><br>Do you understand that? |
| **[WHITE]:** | Uh-huh, yes, sir. |
| **THE COURT:** | I am going to review those elements with you. They are as follows: |

---

[3] This "Statement of Facts" section above is materially identical to the facts set forth in section 4 of White's Guilty Plea Agreement. *See United States v. Kevin White,* Case No. 4:19-cr-00961-SRC-4, Doc. 442 at § 4.

5

|  |  |
|---|---|
|  | That between January 2018 and the date of the indictment in this case, which is November 20th, 2019, that you entered into an agreement or understanding to possess with the intent to distribute a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance; that you voluntarily and intentionally joined in the agreement or understanding to possess with intent to distribute fentanyl either at the time it was first reached or at some later time while it was still in effect; and that at the time you joined in the agreement or understanding, you knew of the purpose of the agreement or understanding and the conspiracy was responsible for distributing at least 400 grams of fentanyl.<br><br>Do you understand all of those? |
| **[WHITE]:** | Yes, sir. |
| **THE COURT:** | Did you, in fact, do all of those things? |
| **[WHITE]:** | Yes, sir. |
| **THE COURT:** | Section 4 of your guilty plea agreement sets forth the facts that you, your attorney and the AUSA have all agreed are true and correct. I take it you went through that section of facts in the guilty plea agreement in detail with your attorney and you understand all of the facts set forth in Section 4 of the plea agreement? |
| **[WHITE]:** | Yes, sir. |
| **THE COURT:** | And do you agree or do you understand that if you admit those facts in Section 4 they become what's called relevant conduct which is conduct that I can and will take into account at the time I determine your sentence? |
| **[WHITE]:** | Yes, sir. |
| **THE COURT:** | And do you agree that all the facts set forth in Section 4 of the plea agreement are true and correct and that you, in fact, did do all of those things? |
| **[WHITE]:** | Yes, sir. Yes, sir. |

Plea & Sent. Tr. at 13:18–15:10.

6

During the sentencing portion of the hearing, the Court accepted the parties' joint recommendation and sentenced White to a below-the-guidelines-range sentence of 120 months of imprisonment followed by a three-year term of supervised release for his conviction. Doc. 446. Although White had the right to appeal any jurisdictional issues, he did not appeal his conviction or sentence. White is currently serving his sentence at USP Lee in Virginia with a projected release date of September 23, 2029.[4]

In February 2022, White timely filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.[5] Doc. 1. In his motion, White raises subject-matter jurisdiction and due-process violations as his grounds for relief. *Id.* at pp. 2–3. However, White's motion does not set forth any facts to support his claim. *Id.* Instead, White attaches an eight-page document tiled: "Attachment to Affiant's Affidavit of Facts for Motion to Vacate, Set Aside, Correct a Sentence or Challenge the Legality of the Restraint??? This Petition is under 28 U.S.C. § 2255." Doc. 1-1. While unclear, it appears that White's attachment challenges the indictment and jurisdiction, claims he was coerced and misrepresented by defense counsel, and raises various Constitutional violations. *See id.* White also filed a document titled "Rebuttal of Prosecutors [sic] Claims," which the Court construes as a reply. Doc. 8.

### III. Standard of review

A federal prisoner who seeks relief under 28 U.S.C. § 2255 on grounds "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To

---

[4] Find an inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited August 22, 2022).

obtain relief under Section 2255, the petitioner must establish a constitutional or federal statutory violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003).

Claims brought under section 2255 may be limited by procedural default. A petitioner "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). However, the Eighth Circuit has twice noted in dicta that, if the error claimed by a petitioner is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis. *Beaulieu v. Minnesota*, 583 F.3d 570 (8th Cir. 2009); *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002) ("[I]f the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis."); *but see Tripp v. United States*, No. 1:11CV00118 ERW, 2012 WL 27930 (E.D. Mo. Jan. 5, 2012) ("[C]onstitutional or jurisdictional claims not raised on direct appeal cannot be raised in a § 2255 motion unless the movant can establish '(1) cause for the default and actual prejudice or (2) actual innocence.'") (quoting *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001)); *Snider v. United States*, No. 4:09CV1171 HEA, 2011 WL 6372345 (E.D. Mo. Dec. 20, 2011) (same).

Ineffective-assistance-of-counsel claims may be raised for the first time in a Section 2255 motion even if they could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Additionally, a petitioner's attorney may serve as counsel for both the trial and appellate case, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

8

To succeed on an ineffective-assistance-of-counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced the movant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001); *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).  A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to Section 2255. *DeRoo*, 223 F.3d at 925.  An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland,* at 687–88; *Sera*, 267 F.3d at 874.  Two substantial impediments exist to making such a showing.  First, the law applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689); *Sera*, 267 F.3d at 874.  Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690).  Similarly, counsel is not ineffective for failing to pursue a motion to suppress that he reasonably believes would be futile. *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C.A. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994).  A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (citation omitted).  However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

9

## IV. Discussion

### A. Jurisdiction

While his motion is difficult to decipher, it appears that White asserts that this Court lacked subject-matter jurisdiction. Below, the Court quotes White verbatim, without noting or correcting any errors in grammar or punctuation:

> IT IS AXIOMATIC THAT FEDERAL DISTRICT COURTS ARE COURTS OF LIMITED JURISDICTION AND THEIR POWERS ARE ENUMERATED IN ARTICLE III, OF THE U.S. CONSTITUTION, PURSUANT THIS COURTS FINDING IN THE UNITED STATES OF AMERICA, V. KEVIN WHITE, CASE NO. 4:19-CR-00961-SRC-4 THAT IT LACK JURISDICTION WILL SUPPORT WHY THE COURTS SUBJECT ~~MATTER~~ JURISDICTION IS NOW BEING CHALLENGED. SEE GUARDIAN LIFE V. ROKKONEN , 377, 114 S. CT. 1673, 128 L.ED 2D 391 (1994) HUDSON V. COLEMAN, 347 F.3D 138, 141 (6th CIR. 2003)
>
> IT IS WELL ESTABLISHED THAT FEDERAL COURTS ARE COURTS OF LIMITED JURISDICTION, POSSESSING ONLY THE POWER AUTHORIZED BY CONGRESS, IN THE SOCIAL CONTRACT OF THE UNITED STATES CONSTITUTION (ART. III).
>
> JURISDICTION DEFINES THE CONTOURS OF THE AUTHORITY OF COURTS TO HEAR AND DECIDE CASES AND IN DOING SO, IT DICTATES THE SCOPE OF THE JUDICIARY'S INFLUENCE. DOUGLAS V. E.G. BALDWIN & ASSOCIATES INC., 150 F.3D 604, 606, (6th CIR. 1998) OVER RULED.
>
> THE PARTY THAT SEEKS TO INVOKE A FEDERAL DISTRICT COURTS JURISDICTION BEARS THE BURDEN OF ESTABLISHING THE COURTS JURISDICTION  KOKKONEN, 511 U.S. AT 377  THE GOVERNMENT, HAS YET TO SATISFY THIS IN THERE PROSECUTION, IN MR. WHITES CASE THE GOVERNMENT USED A BURDEN SHIFTING ACT, AND THE COURT ENTERTAINED IT OR MORE LIKE ABETTED THE SCEAM.
>
> MR. WHITE ASSERTS LASTLY ON JURISDICTION THAT § 2255(A) STATES: A PRISONER IN CUSTODY UNDER SENTENCE OF A COURT ESTABLISHED BY ACT OF CONGRESS CLAIMING THE RIGHT TO RELEASE HE WILL SATISFY THIS AS WELL.
>
> MR. WHITE, NOTES THAT SECTION 21 U.S.C. § 841(A)(1) DOES NOT INCORPORATE A FEDERAL ARREST, OR A INDICTMENT UNLESS THERE IS A STATE DISMISSAL AND MR. WHITE COMMITTED AN

>  OFFENSE OR THE SAME OFFENSE ON BOTH STATE AND FEDERAL TERRITORIES.

Doc. 1-1 at pp. 2–3.  White further explains that:

> THE 1975 ACT OF JULY 31, SECTION 3(5)-(A) (EFFECTIVE 12/13/75 AS PROVIDED BY § 2 OF THE STATES) (STATES OF THE UNION) HAVE FORCE, ONLY IN NEW DISTRICT OF COLUMBIA 10 SQUARE MILES OUTSIDE OF D.C. AND MARYLAND (CAHA U.S. 152, U.S. 211 (1984)).
>
> ARTICLE IV SEC III C. II EXPRESS THAT CONGRESS (HOW THEY CAN MAKE FEDERAL STATUTES) "SHALL HAVE POWER" TO DISPOSE OF (TO PLACE OR SET INTO PARTICULAR ORDER) AND MAKE ALL NEEDFUL RULES AND REGULATIONS, RESPECTING THE TERRITORY OR OTHERS BELONGING TO THE UNITED STATES "OUTSIDE" OF AMERICA, (HIGH SEAS) IS THE COURTS TESTIMONY UNDER ITS OATH AND PENALTIES OF PERJURY THAT MISSOURI IS APART OF THE CORPORATION'S JURISDICTION? OUTSIDE OF AMERICA?
>
> OR FOR THE RECORD, IS IT YOUR TESTIMONY UNDER OATH OR AFFIRMATION UNDER PENALTY OF PERJURY, THAT THE STATE OF MISSOURI INSIDE OF THE UNITED STATES OF AMERICA, BELONGS TO THE GEOGRAPHICAL UNITED STATES NC "FEDERAL GOVERNMENT OF THE HIGH SEAS"? OUTSIDE THE UNION OF THE UNITED STATES????
>
> MR. WHITE ASSERT THAT THE DISCOVERY DOES NOT PRODUCE THE CED ED LETTER FROM MISSOURI STATES LEGISLATION GRANTING THE FEDERAL GOVERNMENT JURISDICTION OVER IT'S LAND OR ESTABLISHING TO THEM POLICE POWER TO MAKE INDEPENDENT ARRESTS, WHICH MEANS THAT MISSOURI HAS GIVING UP IT'S SOVEREIGHTY POWER OVER IT'S OWN LAND AND AS WELL AS IN HAVE ILLEGALLY CONTRACTED IT'S CITIZENS RIGHTS AWAY WHICH WOULD BE A 10TH AMENDMENT VIOLATION, AGAINST THE BILL OF RIGHTS.
>
> RELYING ON LANGUAGE IN HUSTON V. MOORE, 18 U.S.C. 5 WEAT IC 5 L.ED 19 (1820)), HE CONTENDS THAT THE FEDERAL PROSECUTION IS WITHOUT AN INDEPENDENT FEDERAL INTEREST IN HIM, OR A INDEPENDENT FEDERAL ARREST ON OR AROUND THE SAME TIME AND DATE AS THE ALLEGED STATE OFFENSE ACCRUED LEAVING THE CLOCK RUNNING TO SEE WHICH SOVEREIGN WOULD TAKE THE PLAINTIFF FIRST. (ARTICLE III).

*Id.* at pp. 5–6.

Although White did not waive his right to appeal jurisdictional issues, he nonetheless failed to appeal this issue on direct appeal. Normally, if a petitioner fails to raise an issue on direct appeal, he is procedurally barred from bringing his claim in collateral proceedings absent a showing of cause to explain the default and prejudice arising therefrom, or a showing of actual innocence. However, the Eighth Circuit has held that "if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis." *Mooring*, 287 F.3d at 727. The Court construes White's motion as raising jurisdictional grounds, and the Court will address those grounds.

"The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231; *see also United States v. Cotton*, 535 U.S. 625, 630–31 (2002) ("[A] district court 'has jurisdiction of all crimes cognizable under the authority of the United States . . . .") (quoting *Lamar v. United States*, 240 U.S. 60, 65 (1916)); *United States v. Trotter*, 478 F.3d 918, 920 n.2 (8th Cir. 2007) (per curiam) (rejecting defendant's argument that the district court erred in failing to dismiss his indictment for lack of jurisdiction "[b]ecause [the defendant] was charged with an offense against the laws of the United States" such that "the court clearly had jurisdiction"); *United States v. Deering*, 179 F.3d 592, 597 (8th Cir. 1999); *United States v. Watson*, 1 F.3d 733, 734 (8th Cir. 1993) (under Section 3231, federal district courts possess original jurisdiction over all violations of federal law).

Here, White was charged in a one-count indictment with conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl in violation of a federal statute, 21 U.S.C. § 841(a)(1). *United States v. Kevin White,* 4:19-cr-00961-SRC-4, Docs. 1–2. The Court clearly had jurisdiction, as White was charged with an offense in the Eastern District of

Missouri against the laws of the United States. *Id*. As such, the Court denies White's jurisdiction claims as meritless.

**B.     Due process**

Next, White seems to imply that the indictment against him was improperly returned. Below, the Court quotes White verbatim, without noting or correcting any errors in grammar or punctuation:

> MR. WHITE, REASON THAT § 841(A)(1) AS ALLEGED IN THE GOVERNMENT'S DRAFTED AND FILED IN UNINDICTMENT, THAT CLEARLY DOES NOT CITE AN NDEPENDENT OFFENSE AGAINST THE FEDERAL GOVERNMENT SO THEY FAILED TO STATE A CLAIM IN WHICH RELIEF SHOULD HAVE EVER BEEN GRANTED.  THE GOVERNMENT FAILED TO PROPERLY SERVICE THE INDICTMENT BEFORE A FEDERAL GRAND JURY, FED. R. CRIM. P. 6 AND THE FIFTH AMENDMENT IN THAT THE INDICTMENT BROUGH HAD BEEN "FOUND" BY THE REQUISITE 12 JURORS OF A FEDERAL GRAND JURY.
>
> PROPER INDICTMENT PROCEDURE REQUIRED SUBMISSION OF A FORMAL INDICTMENT TO THE GRAND JURY FOR APPROVAL AFTER THE PROSECUTOR DRAFTED IT, SUCH THAT REVIEW OF THE INDICTMENT BY AND THE SIGNATURE OF THE FOREMAN ALONE REQUIRED DISMISSAL OF THE INDICTMENT.
>
> AFTER THE GRAND JURY VOTED TO "PRESENT" DEFENDANTS FOR GRAND JURY LARCENY, THE INDICTMENT WAS DRAFTED BY THE PROSECUTOR'S OFFICE BUT WAS NEVER CONSIDERED AGAIN BY ALL 12 JURORS.  INSTEAD, THE GRAND JURY FOREMAN REVIEWED AND SIGNED THE INDICTMENT.  TYRONE GAITHER, APPELLANT V. UNITED STATES OF AMERICA, APPELLEE, 413 F. 2D 1061;
>
> A PRESENTMENT MUST BE DRAWN UP INTO A BILL OF INDICTMENT AND RESUBMITTED TO THE GRAND JURY.  THIS DID NOT HAPPEN.
>
> . . .
>
> WHITE ASSERT THAT THERE IS NO RECORD OF A FEDERAL GRAND JURY EVERY TAKING SESSION AGAINST HIM., TYRONE GAITHER V. UNITED STATES OF AMERICA, 413 F.2D 1061, THE RECORD ONLY REFLECTS A FRAUDLENT INDICTMENT THAT WAS CLEARLY FILED IN BY THE PROSECUTOR WITH FULL INTENTIONS OF DECEIVING BOTH THE PLAINTIFF AND THE COURTS; THAN THE PROSECUTION WENT ON

TO COERCED THE PLAINTIFF TO BELIEVE THAT THEIR INDICTMENT HAD BEEN PROPERLY SERVICED AND SUBMITTED TO THE FEDERAL GRAND JURY AND THAN RETURNED IN OPEN COURT (FEDERAL COURT) AS REQUIRED BY FEDERAL RULE 6(F).

. . .

MR. WHITE ASSERT THAT HE WAS UNDER DURESS AND MENTAL COERCION FROM FALSE PRENTION AND MISREPRESENTATION OF COUNSLER, THAT A LAWFUL INDICTMENT HAD BEEN FALLY SERVICED, BUT DIDN'T PRODUCE THE MINUTES OR THE 12 JURORS THAT CONCURRED.

THIS IS A 6TH AMENDMENT VIOLATION OF THE BILL OF RIGHTS DUE PROCESS VIOLATION AND A 6(F) VIOLATION OF THE FEDERAL RULES. THE COURT FAILED TO MAKE THE GOVERNMENT SATISFY ITS ON BURDEN, TO ENVOKE THE COURT'S SUBJECT MATTER JURISDICTION, OVER THE TERRITORY JURISDICTION AND THE JUDICIAL POWER PURSUANT TO ARTICLE III TO ENTERTAIN THE CLAIM.

A BURDEN SHIFTING TO THE PLAINTIFF WHOM AT THE TIME WAS THE DEFENDANT, THIS IS A TRAVESTY OF JUSTICE AND A BLANTING DUE PROCESS VIOLATION FROM THE BEGINNING. THE COURT WAS NEVER SUPPOSE TO ACCEPT THE PLAINTIFF PLEA OF GUILTY WITHOUT THE GOVERNMENT FIRST SATISFYING IT'S BURDEN OF COMPLAINT PURSUANT TO RULE 3.  THEY COULD NOT LAWFULLY HOLD HIM TO EVEN ANSWER FOR A CRIME WITHOUT, A PRESENTMENT OR LAWFUL INDICTMENT WHICH STILL HAVE NOT BEEN PROVEN TO EXIST.

THE TERRITORY JURISDICTION OF THE COURT "28 U.S.C. § 455," PURSUANT TO THE NOTE TO RULE 4 SUBECS (C) AND (E)(1)–(4) FOR ONE WHICH READS

(1)     THE NATURE OF THE CHARGE TO WHICH THE PLEA IS OFFERED, THAT MEANS THAT THERE WOULD HAVE TO HAVE BEEN A LAWFUL CHARGING INDICTMENT OR AT BEST A PRESENTMENT, FIFTH AMENDMENT.

(2)     THE COURT ENTERTAINED A SHAM PROSECUTION AGAINST THE PLAINTIFF AND ALLOWED THE SAME UNTIED STATES OF AMERICA INCORPORATED "OUTSIDE THE UNITED STATES" TO PRETEND LIKE THEY SATISFYING THIS PROCEDURE

Doc. 1-1 at pp. 3–7.

White cities to no evidence—and the Court finds none—in the record supporting his assertion that the indictment was returned improperly. Rule 6(f) of the Federal Rules of Criminal Procedure provides that:

> A grand jury may indict only if at least 12 jurors concur. The grand jury—or its foreperson or deputy foreperson—must return the indictment to a magistrate judge in open court. To avoid unnecessary cost or delay, the magistrate judge may take the return by video teleconference from the court where the grand jury sits. If a complaint or information is pending against the defendant and 12 jurors do not concur in the indictment, the foreperson must promptly and in writing report the lack of concurrence to the magistrate judge.

Under Rule 6(f) of the Federal Rules of Criminal Procedure, on November 20, 2019, the grand jury's foreperson returned the indictment in open court before U.S. District Judge Audrey G. Fleissig. *United States v. White,* Case No. 4:19-cr-00961-SRC-4, Docs. 1–2. The indictment was signed by the foreperson, attesting to a valid vote by a quorum of Grand Jurors, duly sworn. *Id.* Nothing in the record suggests that fewer than 12 grand jurors concurred in White's indictment. Thus, White's improper-indictment argument fails.

### C.     Ineffective assistance of counsel

Lastly, White claims that his counsel provided ineffective assistance. Below, the Court quotes White verbatim, again without noting or correcting any errors in grammar or punctuation:

> THE GOVERNMENT CONDUCTED A HORSE AND PONY SHOW AT THE EXPENSE OF MR. WHITE LIBERTY AND HUMAN RIGHTS., THE PLAINTIFF COUNSEL KNEW THESE SHAMS WAS HAPPENING AND DID NOTHING TO AFFORD HIM A DUE PROCESS OR AT BEST 6TH AMENDMENT REPRESENTATION INSTEAD THE COUNSEL HELP COERCE THE PLAINTIFF TO ILLEGALLY CONTRACT HIS UNCONTRACTABLE RIGHTS AWAY FOCUSING ONLY ON HIS GUILTY AND NOT HIS DUE PROCESS.

Doc. 1-1 at p. 8.

The Court finds, as explained above, that defense counsel had no legal basis for challenging the Court's jurisdiction or the legality of the indictment. Having thoroughly

15

reviewed the record, including White's Guilty Plea Agreement and the transcript of White's guilty-plea hearing, the Court finds that White knowingly and voluntarily pleaded guilty, and that defense counsel did not provide ineffective assistance. As such, the Court denies White's ineffective-assistance claims. *See Rodriguez v. United States,* 17 F.3d 225, 226 (8th Cir. 1994) ("[C]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance").

## V.     Certificate of Appealability

The Court further finds that White has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability will issue. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining a substantial showing is a showing the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings). Therefore, the Court does not issue a certificate of appealability.

## VI.    Conclusion

The Court finds that the record conclusively establishes that White is not entitled to relief. Therefore, the Court denies White's [1] Motion to Vacate, Set Aside, or Correct Sentence, and his request for an evidentiary hearing.

So Ordered this 22nd day of August 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE